# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| PIPE WRAP LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-08-0822 |
| | § | |
| P3 INDUSTRIAL TECHNOLOGIES, | § | |
| INC., JULIUS G. CRISLER, GARY | § | |
| PONDER, and GUADALUPE | § | |
| GONZALES, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

Pipe Wrap, LLC sued P3 Industrial Technologies, Inc., Julius G. Crisler, Gary Ponder, and Guadalupe Gonzales.  (Docket Entry No. 17).  Pipe Wrap alleged that the defendants adopted a trademark that Pipe Wrap was already using to sell similar pipe-repair products, and that the defendants marketed their products using material substantially copied from Pipe Wrap's own marketing materials. (*Id.* at ¶¶ 9-12).

P3's counsel was allowed to withdraw.  This court ordered P3 to file a notice of appearance by new counsel by October 3, 2008.  (Docket Entry No. 26).  P3 never complied.  Pipe Wrap has moved for default judgment on its Lanham Act claim against P3.  Pipe Wrap has also moved for default judgment under the Lanham Act against one of the individual defendants, Julius Crisler, for failing to answer.  (Docket Entry No. 24).   This court grants Pipe Wrap's motion for default judgment against P3 and Crisler and enters final judgment by separate order.

**I.     Background**

Pipe Wrap, a Texas limited liability company based in Houston, manufactures and sells a variety of composite piping-repair products, which it has marketed under the trade names "Pipe Wrap" and "Pipe Wrap Plus," among others. (Docket Entry No. 17 at ¶ 2, Docket Entry No. 25-2, at ¶¶ 3,4). P3, a Texas corporation, also sold pipe-repair products and was based in Houston. (Docket Entry No. 17 at ¶ 3, 12). Julius Crisler, Gary Ponder, and Guadalupe Gonzales were officers and shareholders of P3. (Docket Entry No. 25-8, Ex.B).

Pipe Wrap alleged that "[w]ith full knowledge of Pipe Wrap's use of the names and marks PIPEWRAP and PIPEWRAP PLUS, P3 has adopted and is using the mark 'PIPEWRAP PLUS' for remedial materials for piping in direct competition with Pipe Wrap." (Docket Entry No. 17 at ¶ 12). Pipe Wrap contended that such use was likely to cause confusion among consumers. (*Id.*). Pipe Wrap further alleged that P3 was using an advertising brochure that was created by Pipe Wrap's predecessor in interest, Para Fijar Enterprises, Inc. (*Id.* at ¶ 13). Pipe Wrap has a pending copyright registration application for that brochure. (Docket Entry No. 24 at 2). Pipe Wrap alleged that P3's brochure advertising its own Pipe Wrap Plus products contained substantially the same language as Pipe Wrap's marketing materials. (Docket Entry No. 17 at ¶¶ 13-14, Exs. A, B).

Pipe Wrap filed this suit on March 13, 2008, naming only P3. (Docket Entry No. 1). P3 answered on April 23, 2008. (Docket Entry No. 6). On August 15, 2008, P3's counsel moved to withdraw due to a conflict of interest. (Docket Entry No. 14). This court granted the motion on August 20, 2008. (Docket Entry No. 16). Because corporations may not appear pro se, this court ordered P3 to file a notice of appearance by new counsel by October 8, 2008. (*Id.*). In setting that deadline, this court warned P3 that if it failed to comply, it "may face judgment by default." (*Id.*).

On September 5, 2008, Pipe Wrap filed its First Amended Complaint, adding Crisler, Ponder, and Gonzales as defendants. (Docket Entry No. 17). All defendants except Gonzales were served with the amended complaint. (Docket Entry Nos. 18-21). No defendant answered or otherwise appeared. On November 21, 2008, this court granted Pipe Wrap's motion for discovery from P3's bank in support of a planned motion for default judgment. (Docket Entry No. 23). Pipe Wrap obtained that discovery and, on March 6, 2009, filed this motion for default judgment against P3 and Crisler. (Docket Entry No. 24).

Pipe Wrap asks this court to enter a judgment for monetary damages against P3 and Crisler, jointly and severally, for violating the Lanham Act, 15 U.S.C. § 1125(a); to enjoin these defendants from further use of the marks "Pipe Wrap" and "Pipe Wrap Plus"; dismiss Gonzales and Ponder from the case, without prejudice; and dismiss without prejudice the claims for copyright infringement and common law trademark infringement. (*Id.*). No response has been filed.

## II.     The Legal Standard for Default Judgments

Under Fifth Circuit law, there are three steps to obtaining a default judgment: (1) default; (2) entry of default; and (3) default judgment. *New York Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir.1996). "A default occurs when a defendant has failed to plead or otherwise respond to the complaint within the time required by the Federal Rules. An entry of default is what the clerk enters when the default is established by affidavit or otherwise. After defendant's default has been entered, plaintiff may apply for a judgment based on such default. This is a *default judgment*." *Id.* (emphasis in original) (citations and footnote removed). District courts in the Fifth Circuit have characterized that language as establishing a "three-step process," in which default must precede entry of default and entry of default must precede default judgment. *See American States Ins. Co. v. Arete Real*

3

*Estate & Devel.*, No. 3:08-CV-306-O, 2009 WL 854836, at *2 (N.D. Tex. Mar. 30, 2009); *Allstate Texas Lloyds v. Shah*, No. 1:08-CV-56, 2009 WL 1025399, at *2 (E.D. Tex. Apr. 16, 2009); *Lester v. Lester*, No. 3-06-CV-1357-O, 2008 WL 5110842, at *2 (N.D.Tex. Dec. 4, 2008); 10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE & PROCEDURE § 2682 (3d ed. 2009) ("Prior to obtaining an entry of default judgment. . . there must be an entry of default. . . .").

Under Rule 55(a), a default must be entered when a party shows "by affidavit of otherwise" that another party "against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend. . . ." FED. R. CIV. P. 55(a). Under the rule, either the clerk or the court may enter the default. *See U.S., for and in Behalf of Fed. Housing Admin. v. Jackson*, 25 F. Supp. 79 (D. Or. 1938); *Sys. Indus., Inc. v. Han*, 105 F.R.D. 72, 74 n.1 (E.D.Pa. 1985); 10A WRIGHT, MILLER & KANE § 2682.

After default is entered, default judgment may be entered under Rule 55(b). Default judgment may be entered against parties that have appeared in the action "either personally or by a representative." FED. R. CIV. P. 55(b)(2). For such parties, however, Rule 55(b)(2) requires notice to the party or its representative before any "hearing" on a motion for default judgment. *Id.*

## III. Analysis

Pipe Wrap has moved for default judgment on its Lanham Act § 43(a) claims based on P3's failure to file a notice of appearance of new counsel or answer the first amended complaint and Crisler's failure to file and answer or otherwise defend. (Docket Entry No. 24 at 1). The record shows that both these defendants have defaulted. P3's deadline for counsel to appear on its behalf passed on October 3, 2008. (Docket Entry No. 16). P3's failure to file a notice of appearance by

4

the October 8 deadline puts it in default. *See U.S. Fidelity & Guaranty Co. v. Brasileiro,* 220 F.R.D. 404, 405-06 (S.D.N.Y. 2004) (the court granted defense counsel's motion to withdraw from representing a group of corporate defendants and stated "that if the [defendants] do not appear by new counsel by August 11, 2003, any party may seek a default judgment against [them]"; when the defendants failed to do so, they were in default. . ." because they "did not comply with the explicit direction of the court. . . ."). Crisler was served with the summons and complaint on September 27, 2008; his deadline to file an answer passed on October 17, 2008. (Docket Entry No. 18). Crisler's failure "to plead or otherwise respond to the complaint within the time required by the Federal Rules" is a clear default. *See Brown*, 84 F.3d at 137.

Rule 55's second step is entry of default. *See* FED. R. CIV. P. 55(a); *Brown*, 84 F.3d. at 137. Rule 55(a) provides:

> When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default.

FED. R. CIV. P. 55(a). Pipe Wrap has submitted record information showing that entry of default is appropriate. Default is entered under Rule 55(a).

Pipe Wrap has filed a declaration of its chief executive officer, Genevieve Withers, with supporting exhibits, in support of its claim for violations of the Lanham Act. (Docket Entry No. 25-2). The evidence shows that Pipe Wrap's mark "Pipe Wrap" was in use before and had achieved a secondary meaning before February 7, 2004 and that the defendants copied the mark for the purpose of trading on Pipe Wrap's goodwill and established reputation. (*Id.* at ¶¶ 4-9). The evidence also shows that there is a likelihood of confusion from P3's use of its marks, "Pipewrap"

and "Pipewrap Plus," for which P3 sought trademark registration in early 2005.  (*Id.* at ¶¶ 6-9, Exs. E,F).

Pipe Wrap has also submitted a declaration of its counsel describing information about P3's revenues, the prosecution history of its trademark registration, and the basis for cancelling that registration.  (Docket Entry No. 25-8).  The evidence in the record also shows that Crisler, an officer of P3, signed documents in support of the application to register the marks "Pipewrap" and "Pipewrap Plus" on behalf of P3.   (*Id.* at ¶ 7).  Crisler directed James Stevens, an accountant and P3's registered agent to file the registration documents with the Patent and Trademark Office.  (*Id.*, Ex. B).  Crisler, along with Gonzales, also put together the brochure P3 used to market its products, the brochure that is a copy of Pipe Wrap's brochure. (*Id.*, Ex. C; Docket Entry No. 25-2, Ex. E).

The evidence shows that from 2005 to 2008, P3 deposited $1,549,149 in revenues from its business in its account in Amegy Bank.  (Docket Entry No. 25-8 at ¶ 4, Ex.  A).  Pipe Wrap argues that it should be awarded all of P3's revenues because, under the Lanham Act, "the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed."  15 U.S.C. § 1117.  Pipe Wrap is entitled to "those profits attributable to the unlawful use of [a] mark." *Pebble Beach Co. v. Tour 18 Ltd.*, 155 F.3d 526, 554 (5th Cir. 1998) (citation omitted). The only evidence in the record is that P3's revenues were from its business in which it used Pipe Wrap's marks unlawfully.

There is no "bright-line rule in which a showing of willful infringement is a prerequisite to an accounting of profits." *Quick Technologies, Inc. v. Sage Group PLC*, 313 F.3d 338, 349 (5th Cir. 2002).  The Fifth Circuit cases apply a multifactor test in which wilfulness is one consideration. *Id.; Pebble Beach Co. v. Tour 18 Ltd.*, 155 F.3d 526 (5th Cir. 1998).  The other factors are whether sales

have been diverted, whether other remedies are adequate, whether the plaintiff unreasonably delayed in asserting his rights, whether the public has an interest in the misconduct, and whether "it is a case of palming off." *Pebble Beach Co.*, 155 F.3d at 554. P3 was a competitor selling similar products to similar customers. P3's use of confusingly similar marks indicates"palming off" and that P3 may have diverted Pipe Wrap's sales. Pipe Wrap asserted its rights promptly. The evidence in the record also shows that one of the defendants was involved in developing the P3 brochure and was subject to a confidentiality agreement, which was breached. (Docket Entry No. 25-2 at ¶ 5). The evidence also shows that P3 continued to use the marks after receiving a cease-and-desist letter. (*Id.* at ¶ 6). There is sufficient evidence in the record to warrant an award of profits.

Pipe Wrap has also asked for cancellation of P3's trademark registration. Because Pipe Wrap has shown prior use and a likelihood of confusion, it is appropriate that P3's registration be cancelled. Under Lanham Act § 37, federal courts have the power to order registrations cancelled "[i]n any action involving a registered mark." 15 U.S.C. § 1119. Pipe Wrap's declarations and supporting material are sufficient for this court to order cancellation.

Pipe Wrap has sent the defendants notice of the motion for entry of default judgment. Further notice to the defendants and further hearings are not necessary to satisfy Rule 55(b)(2). *See Ad West Marketing, Inc. v. Hayes*, 745 F. 2d 980, 985 n.7 (5th Cir.1984) ("Since counsel for the plaintiff was present at the February 15 hearing when the default judgment was first filed, and since a copy was served on all parties, this more than suffices for Rule 55's three day notice requirement in taking a default judgment on March 10."); 10A WRIGHT, MILLER & KANE §§ 2687, 2688.

**III.    Conclusion**

Pipe Wrap has established that Crisler and P3 are in default and this court enters default. Pipe Wrap has established that it is entitled to default judgment against P3 and Julius G. Crisler, jointly and severally, in the amount of $1,549,149 in damages for violations of § 43(a) of the Lanham Act; an injunction prohibiting P3 and Crisler from using the marks "Pipewrap" and "Pipewrap Plus"; and an order to the Director of the Patent and Trademark Office to cancel U.S. Trademark Registration No. 3,190,069. This court also grants Pipe Wrap's request to dismiss the remaining defendants and claims, without prejudice.

Final judgment as to P3 and Crisler, and an order of dismissal as to the other defendants, are entered by separate order.

SIGNED on August 31, 2009, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge